# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-153** |
| **AKARI WILLIAMS** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is Defendant Akari Williams' petition under 28 U.S.C. § 2255 to vacate, set aside, or correct, his sentence.[1] For the reasons that follow, the petition is **DENIED**.

## BACKGROUND

On May 27, 2014, a man brought a box to a UPS store in Riverside, California, to ship to "John Lirette" at 332 Grace Street in Houma, Louisiana.[2] Because the package looked suspicious, the UPS store owner opened the box on May 27, 2014, and then called the San Bernardino County Sheriff's Department to pick it up.[3]  The sheriff's deputies came, and after a drug dog alerted to the box, they obtained a warrant to search it.[4] Inside the box, the sheriffs found a paint can containing three packages of methamphetamine totaling 48.78 ounces.[5] Because the box was intended for delivery to Houma, Louisiana, the California sheriffs contacted the Terrebonne Parish Sheriff Office's narcotics division and shipped the box to them.[6]

After the Terrebonne Parish Sherriff's Office received the box, it obtained a search

---

[1] R. Doc. 365. The Government filed a response. R. Doc. 369. Williams filed a supplemental memorandum and two responsive memoranda. R. Doc. 370; R. Doc. 375; R. Doc. 378; R. Doc. 379.
[2] R. Doc. 106-1.
[3] R. Doc. 349, at 249.
[4] R. Doc. 350, at 15–17.
[5] *Id.* at 20–23.
[6] *Id.* at 23–24.

warrant.[7] Pursuant to the warrant, agents opened the box and saw the three pounds of methamphetamine.[8] The agents equipped the box with an audible transmitter and an iPhone with a FaceTime feature and conducted a controlled delivery of the package to 332 Grace Street.[9] Before going to the address, the agents obtained a search warrant to allow them to search 332 Grace Street.[10] Agents delivered the box to 332 Grace Street, and Lirette accepted it.[11] Less than two minutes later, Lirette took the box to 313 Grace Street, where Petitioner Akari Williams lived.[12] The box was soon opened, the audible transmitter sounded, and agents took photos through the camera in the box.[13] The photos captured Williams' face.[14]

Agents quickly entered the house at 313 Grace Street, handcuffed Williams and others inside, and secured the scene.[15] The agents then obtained and executed a search warrant for 313 Grace Street[16] and seized the box and its contents, including the methamphetamine; a digital scale; a loaded AK-47-style rifle; a loaded .40 caliber gun, which was in Williams' car parked in front of his house; and Williams' cell phone.[17] Agents also searched 332 Grace Street and seized more than $4,000 in cash as well as a packet of meth and a meth pipe.[18] When reviewing the contents of Williams' phone, agents found text messages between Williams and a man named Philips Thompson, who initially took

---

[7] R. Doc. 349, at 196–97
[8] *Id.*
[9] R. Doc. 350, at 59–60.
[10] R. Doc. 369-1.
[11] R. Doc. 349, at 202.
[12] *Id.* at 202–03.
[13] *Id.* at 203.
[14] R. Doc. 350, at 64.
[15] R. Doc. 349, at 203–04.
[16] R. Doc. 369-2.
[17] R. Doc. 350, at 72, 75, 215; R. Doc. 351, at 12.
[18] R. Doc. 350, at 65–71.

the box to the UPS store in California.[19] Agents obtained a ping order for Thompson's phone, learned that Thompson was flying to New Orleans from Los Angeles, and arrested Thompson at the New Orleans International Airport.[20]

A federal grand jury indicted Williams, Thompson, and Lirette for conspiring to distribute 500 grams or more of methamphetamine.[21] The grand jury also indicted Thompson for distributing, and Williams and Lirette for possessing with intent to distribute, 500 grams or more of methamphetamine.[22]

Before trial, Thompson moved to suppress "all evidence and any fruits thereof from the unlawful May 27, 2014 package search and seizure in San Bernardino, California," and "all evidence and any fruits thereof from the unlawful July 22, 2014 cell phone seizure from Mr. Thompson's person at the New Orleans Airport."[23] Lirette adopted Thompson's pretrial motion.[24] Thompson argued the initial search of the box by the UPS store owner violated his Fourth Amendment rights.[25] Prior to the trial, the Court denied this motion to suppress.[26] Williams neither adopted Thompson's pretrial motion explicitly nor did he file his own pretrial suppression motion.[27] Lirette's trial was severed,[28] and Williams and Thompson proceeded to trial. Following a four-day trial, the jury convicted Williams and Thompson on all counts.[29]

After the verdict, Williams filed a motion for judgment of acquittal and new trial

---

[19] R. Doc. 351, at 12–18.
[20] *Id.* at 18–19.
[21] R. Doc. 36.
[22] *Id.*
[23] R. Doc. 67-1, at 1.
[24] R. Doc. 94.
[25] R. Doc. 67.
[26] R. Doc. 118.
[27] *Id.*
[28] R. Doc. 119.
[29] R. Doc. 217.

3

based on a claim that all evidence, and any fruits thereof, obtained through the May 27, 2014, search of the box should have been suppressed.[30] Williams acknowledged he did not file a pretrial suppression motion but claimed "he effectively joined the pretrial motion to suppress filed by counsel for Philips Thompson" when his trial counsel orally moved to adopt all pleadings filed by co-defendants.[31] The Court disagreed, finding that Williams did not timely file a pretrial suppression motion and that no good cause existed to consider his post-trial suppression motion.[32] However, the Court stated that, even if it were to consider Williams' suppression motion as timely, Williams did not have Fourth Amendment standing to seek suppression of the evidence and any fruits thereof obtained through the May 27, 2014, search of the box.[33] The Court sentenced Williams to 188 months' imprisonment and five years' supervised release.[34]

On appeal, Williams argued there was insufficient evidence to convict him, that the Court should have granted his motion to suppress the evidence from the May 27, 2014 search and any fruits thereof, and that the Court should not have admitted evidence of "other packages" sent between him and Thompson.[35] The Fifth Circuit held the Court properly denied Williams' motions for acquittal and new trial based on "extensive evidence" of Williams' participation in a conspiracy with Thompson.[36] The Fifth Circuit also determined Williams, by failing to file a timely pretrial motion, waived his right to file a post-trial suppression motion regarding the UPS package.[37] The Fifth Circuit further

---

[30] R. Doc. 242.
[31] *Id.* at 3–4.
[32] *Id.* at 7–8.
[33] R. Doc. 291, at 10–15.
[34] R. Doc. 318.
[35] *United States v. Williams*, 774 F. App'x 871, 874 (5th Cir. 2019).
[36] *Id.* at 874–76.
[37] *Id.*

held, even if Williams had not waived his right to file a post-trial suppression motion regarding the UPS package, the trial court did not err in finding Williams lacked standing to challenge the search of the box.[38]

Williams now moves, under 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence because of alleged ineffective assistance of trial counsel.[39] Williams argues his trial counsel provided ineffective assistance under *Strickland v. Washington*[40] by (1) failing to file a timely motion to suppress evidence found by the UPS store owner in her search of the box,[41] (2) failing to file a timely motion to suppress based on the warrant for 332 Grace Street being void,[42] and (3) failing to file a timely motion to suppress evidence seized during the agent's entry into the residence at 313 Grace Street, Houma, Louisiana.[43] Williams also requested an evidentiary hearing.[44]

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the court that imposed his sentence to vacate, set aside, or correct the sentence.[45] Only a narrow set of claims is cognizable on a § 2255 motion. A prisoner may bring such a motion if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."[46]

---

[38] *Id*. at 876–78.
[39] R. Doc. 365.
[40] 466 U.S. 668, 697 (1984).
[41] R. Doc. 365, at 4.
[42] *Id*. at 7. Williams' supplemental memorandum and replies reiterate some of these arguments. Williams states in his supplemental memorandum a "fourth" ground for relief, but that "fourth" ground is not substantively any different from the first three. R. Doc. 375.
[43] *Id*. at 5.
[44] R. Doc. 375, at 7.
[45] 28 U.S.C. § 2255(a).
[46] *Id*.; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Williams claims his sentence violates the Sixth Amendment of the U.S. Constitution because his counsel offered ineffective assistance before and during trial.[47]

When a § 2255 motion is filed, the district court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."[48] If the motion raises a non-frivolous claim to relief, however, the court must order the Government to file a response or to take other appropriate action.[49] The judge may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery.[50]

After reviewing the Government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted.[51] An evidentiary hearing must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[52]

Ultimately, the defendant bears the burden of establishing claims of error by a preponderance of the evidence.[53] If the court finds the defendant is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[54]

---

[47] R. Doc. 365.
[48] RULES GOVERNING SECTION 2255 PROCEEDINGS, Rule 4(b).
[49] *Id.*
[50] *Id.*, Rules 6–7.
[51] *Id.*, Rule 8.
[52] 28 U.S.C. § 2255(b).
[53] *Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980).
[54] 28 U.S.C. § 2255(b).

In this case, the Court ordered the Government to file a response or take other appropriate action.[55] The Government filed a response.[56] The Court did not schedule an evidentiary hearing at that time.

## LAW AND ANALYSIS

The Court denies Williams' request for an evidentiary hearing because the motion and the files and records of the case conclusively show Williams is entitled to no relief under § 2255.[57] The Court also denies Williams' § 2255 motion to vacate, set aside, or correct his sentence because any pretrial motions to suppress evidence used against him would have been meritless, and "[c]ounsel is not required by the Sixth Amendment to file meritless motions."[58]

## I.  The *Strickland* Standard

In *Strickland v. Washington*, the Supreme Court established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.[59] A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[60] "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

---

[55] R. Doc. 366.
[56] R. Doc. 369.
[57] 28 U.S.C. § 2255(b).
[58] *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995).
[59] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[60] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

"might be considered sound trial strategy."[61] "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."[62]

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.[63] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[64] Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances.[65] "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"[66] A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.[67]

As relevant to this case, the Fifth Circuit has "repeatedly stated that the performance component of *Strickland* does not require counsel "to make futile motions or objections."[68] In *United States v. Gibson*, the Fifth Circuit held a trial counsel's failure to file a meritless motion to suppress evidence did not constitute deficient performance under *Strickland* because "[c]ounsel is not required by the Sixth Amendment to file meritless motions."[69]

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[61] *Strickland*, 466 U.S. at 689.
[62] *Harrington v. Richter*, 562 U.S. 86, 103 (2011).
[63] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).
[64] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).
[65] *See Strickland*, 466 U.S. at 689.
[66] *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).
[67] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).
[68] *United States v. Goodley*, 183 F. App'x 419, 423 (5th Cir. 2006).
[69] 55 F.3d 173, 179 (5th Cir.1995).

result of the proceeding would have been different."[70] In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."[71] In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."[72]

If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, it may dispose of the ineffective assistance claim without addressing the other prong.[73] The Court may address either prong first.[74]

## II.    Williams' Trial Counsel Was Not Deficient for Failing to Timely File Meritless Motions to Suppress.

Williams has not shown his trial counsel failed file any potentially meritorious motions to suppress. Instead, each motion to suppress Williams claims his counsel should have filed would have been meritless, and "[c]ounsel is not required by the Sixth Amendment to file meritless motions."[75] Accordingly, Williams has not shown his trial counsel's performance was deficient. Because the Court finds Williams has made an insufficient showing as to the performance prong of his *Strickland* claims, it will not address the prejudice prong.[76]

---

[70] *Strickland*, 466 U.S. at 694.
[71] *Id.*
[72] *Crockett*, 796 F.2d at 793.
[73] *Strickland*, 466 U.S. at 697.
[74] *Id.* ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.")
[75] *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995).
[76] *Id.* at 697.

A.      **Williams does not have standing to challenge the May 27, 2014, search of the UPS Box.**

After trial, Williams' counsel filed a motion for judgment of acquittal and new trial asserting the evidence found through the UPS store owner's May 27, 2014, search of the box and the fruits thereof should have been suppressed.[77] Williams' counsel acknowledged Williams did not file a pretrial suppression motion but argued "he effectively joined the pretrial motion to suppress filed by counsel for Philips Thompson" when his trial counsel orally moved to adopt all pleadings filed by co-defendants.[78] Although the Court disagreed and found there was no good cause to excuse his failure to file a pretrial motion to suppress,[79] the Court nevertheless fully considered Williams' motion and held Williams did not have Fourth Amendment standing to seek suppression of the evidence found in the box or the fruits obtained thereof.[80] Williams raised this issue on appeal, and the Fifth Circuit affirmed the Court's decision.[81]

The Fourth Amendment permits only those whose reasonable expectations of privacy have been violated to seek suppression of evidence. A defendant seeking suppression has the burden of establishing standing under the Fourth Amendment.[82] That is, the defendant must show "he has a privacy or property interest in the premises searched or the items seized which is sufficient to justify a reasonable expectation of privacy therein."[83] It is firmly established that Fourth Amendment rights are personal and

---

[77] R. Doc. 242.

[78] R. Doc. 242-1, at 3–4.

[79] R. Doc. 291, at 7–8.

[80] *Id.* at 10–15.

[81] *United States v. Williams*, 774 F. App'x 871 (5th Cir. 2019).

[82] *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014) ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *United States v. Wilson*, 36 F.3d 1298, 1302 (5th Cir. 1994); *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

[83] *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) (internal quotation marks omitted).

may not be vicariously asserted.[84] Courts apply a two-pronged inquiry to assess whether a defendant has standing: "[A] defendant's standing [under the Fourth Amendment] depends on (1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place [or object] being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as objectively reasonable."[85] "Such an expectation of privacy is a threshold standing requirement that a defendant must establish before a court can proceed with any Fourth Amendment analysis."[86]

"The Supreme Court has long recognized that '[l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy.'"[87] "Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them."[88] In *United States v. Pierce*, however, the Fifth Circuit held the defendant, who was neither the sender nor the addressee of a package, had no privacy interest in it and, accordingly, had no standing to assert Fourth Amendment objections to a search of the package.[89] The Fifth Circuit further held that, even if the defendant claimed he was the intended recipient of the package, this alone would not confer a legitimate expectation of privacy.[90]

---

[84] *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978).

[85] *Iraheta*, 764 F.3d at 461 (internal quotation marks omitted).

[86] *United States v. Lewis*, 40 F.3d 1325, 1333 (1st Cir. 1994).

[87] *United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) (citing *United States v. Jacobsen*, 466 U.S. 109 (1984); *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970); *Ex Parte Jackson*, 96 U.S. 727, 733 (1878)) (alteration in original).

[88] *Villarreal*, 963 F.2d at 774 (citations omitted).

[89] *Pierce*, 959 F.2d at 1303. *See also United States v. Colon-Solis*, 508 F. Supp. 2d 186, 192 (D.P.R. 2007) ("Conversely, a defendant who is neither the sender nor the addressee of a package has no privacy interest in it and accordingly cannot assert a Fourth Amendment objection to its search.") (citing *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988)).

[90] *Pierce*, 959 F.2d at 1303. *United States v. Givens*, 733 F.2d 339, 342 (4th Cir. 1984) ("[D]efendants' status as intended recipients of the cocaine conferred upon them no legitimate expectation of privacy in the contents of a package addressed to another.").

As the Court explained in its previous order,[91] which the Fifth Circuit affirmed,[92] Williams does not have standing to challenge the May 27, 2014, search of the box by the UPS worker because he was not the sender or addressee of the package. Williams concedes he was not the sender or addressee but has argued he nevertheless has standing because the package was shipped to property he owns and tracking data for the package was found on his cell phone.  In essence, Williams argues he has standing because he was the intended recipient of the contents of the package. As explained above, the Fifth Circuit in *Pierce*, and other courts addressing the same argument, have rejected the notion that a defendant who is neither the sender nor addressee may assert standing in a package sent by common carrier based on the premise that he is the intended recipient of the contents of the package. As a result, Williams' counsel was not deficient in failing to timely file a meritless motion to suppress the evidence, and fruits thereof, found through the May 27, 2014, search of the UPS box.

## B.   Williams does not have standing to challenge the search of 332 Grace Street.

While a property owner who also resides at a home generally has a reasonable expectation of privacy there, courts have recognized "[p]roperty rights in absence of reasonable expectations of privacy in property cannot support a Fourth Amendment claim. Ownership or a leasehold interest must be accompanied by a cognizable privacy interest in the place or thing searched."[93] For example, in *United States v. Nunn,* the Fifth Circuit held a Defendant who owned, but was not driving, a pickup truck used to transport illegal aliens had no reasonable expectation of privacy in the truck and lacked standing to

---

[91] R. Doc. 291, at 10–15.
[92] *United States v. Williams*, 774 F. App'x 871 (5th Cir. 2019).
[93] *United States v. Dyar*, 574 F.2d 1385, 1390 (5th Cir. 1978) (internal citations omitted).

challenge a seizure of it.[94]

The Court assumes Williams owned 332 Grace Street, but based on all the available evidence, Lirette occupied the house, and Williams had no expectation of privacy in it.[95] The package was addressed to Lirette, not Williams, at 332 Grace Street.[96] Prior to the controlled delivery, agents reviewed their databases and learned that, while Williams owned the property, Lirette lived there.[97] During the controlled delivery, Lirette, not Williams, accepted the package at 332 Grace Street.[98] Williams was not found at 332 Grace Street.[99] Instead, the agents found him at 313 Grace Street along with his family.[100] After his arrest, Lirette exclaimed, "Why you send that to my house?" confirming that he lived at 332 Grace Street.[101]

Regardless of whether Lirette actually paid rent to Williams, Williams provides no evidence that he used 332 Grace Street for any purpose, kept any property there, or had any expectation of privacy with respect to the property. As the defendant in *Nunn* gave up his privacy interest in his truck, Williams relinquished his expectation of privacy in 332 Grace Street by leasing the home to Lirette and does not have standing to challenge a search there. Accordingly, Williams' counsel was not deficient in failing to timely file a meritless motion to suppress the evidence found through the search of 332 Grace Street.[102]

---

[94] 525 F.2d 958 (5th Cir. 1976).
[95] R. Doc. 98, at 1 ("There is no dispute that the package was delivered to a home that was rented and occupied by Lirette, but owned by Akari Williams.").
[96] R. Doc. 106-1.
[97] R. Doc. 349, at 201.
[98] *Id.* at 202–03.
[99] *Id.*
[100] *Id.*
[101] R. Doc. 350, at 121.
[102] The Court also finds, even if Williams' counsel was deficient in this regard, Williams has not met the prejudice prong regarding the evidence obtained at 332 Grace Street. That evidence was very minimal—only cash, a small packet of meth, and a meth pipe—compared to the evidence obtained at 313 Grace Street

### C.     The agent's initial entry into 313 Grace Street was a lawful protective sweep.

Williams asserts his counsel was ineffective for not filing a motion to suppress the evidence found through the search of 313 Grace Street. This issue was not raised post-trial or on direct appeal, but that this does not preclude Williams from raising it in his § 2255 motion.[103] Williams objects to the warrantless search of the 313 Grace Street house.[104] The search of 313 Grace Street occurred in two stages: (1) the initial entry in which the agents secured the premises and (2) the full search of the house after the agents obtained a warrant.[105] Because the later search of 313 Grace Street was carried out pursuant to a warrant, the Court understands Williams is referring to initial entry.

The agents did not have a warrant to conduct the initial entry into 313 Grace Street, but the Government argues the entry was justified by the protective sweep exception to the warrant requirement. The protective sweep exception allows officers to perform "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."[106] In order to justify a protective sweep, the government must show "articulable facts which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."[107] If reasonable minds could differ, courts do "not second-guess the judgment of

---

and in the box. Further, there is no evidence linking Williams to the small meth packet or the meth pipe. Williams has not met his burden of showing there is a reasonable probability that but for counsel's error the result of the proceeding would have been different.
[103] *Massaro v. United States*, 538 U.S. 500, 509 (5th Cir. 2003).
[104] R. Doc. 365, at 5.
[105] *Id.* at 204.
[106] *Maryland v. Buie*, 494 U.S. 325, 327 (1990).
[107] *Id.* at 334.

experienced law enforcement officers concerning the risks of a particular situation."[108]

The protective sweep conducted at 313 Grace Street was well justified. Lirette initially accepted the package at 332 Grace Street from the agent making the controlled delivery but then moved the package from 332 Grace Street to 313 Grace Street just two minutes later.[109] Less than a minute after Lirette took the package into 313 Grace Street, the package was opened, which tripped the alarm.[110] Agents monitoring the iPhone in the package saw that Williams had opened the box.[111] They also heard Williams say "flush it."[112] These facts fully supported the agents' swift entry into 313 Grace Street to detain those inside the house to "mak[e] sure there's no destruction or removal of any evidence, and just mak[e] the scene safe."[113] There is no evidence to suggest the sweep went beyond its permissible scope. The agents then obtained a valid warrant to fully search the house.[114] The Fifth Circuit has approved of protective sweeps in very similar circumstances.[115] Accordingly, Williams' counsel was not deficient in failing to timely file a meritless motion to suppress the evidence found through the search of 313 Grace Street.

---

[108] *Blount*, 123 F.3d at 838 (internal quotation marks and citation omitted).
[109] R. Doc. 349, at 201–02.
[110] R. Doc. 350, at 64–65.
[111] *Id.* at 66.
[112] R. Doc. 350, at 120.
[113] R. Doc. 349, at 203.
[114] *Id.* at 204.
[115] *United States v. Mata*, 517 F.3d 279, 289 (5th Cir. 2008) (upholding protective sweep of location where agents made controlled delivery and knew others were present); *United States v. Watson*, 273 F.3d 599, 603 (5th Cir. 2001) (protective sweep was justified where two conspirators entered a residence together with suspected drugs).

## CONCLUSION

**IT IS ORDERED** that Defendant Williams' motion is **DENIED**.[116]

New Orleans, Louisiana, this 2nd day of June, 2020.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[116] R. Doc. 365.